HEARD NOVEMBER TERM, 1879.

CASE No. 796.

S. ADAMS v. C. P. TURNER, EXECUTOR.

Where executors overpay some of the legatees, and, by decree of the Ordinary, they are directed to pay balance due to the other legatees when they have collected the amounts overpaid, such decree creates an absolute obligation upon the executors, with a reasonable time allowed to call in their over-payments.

---

Before PRESSLEY, J., Spartanburg, June, 1879.

The case is fully stated in the referee's report, which is as follows:

This action was commenced by summons and complaint by Sarah Adams, to recover her interest in the estate of Elijah

Turner, deceased. It was referred to me by an order of his Honor, the presiding judge, to hear and determine the issues in the cause. In obedience to this order, I held the reference, attended by the counsel of the parties, and now make the following report:

From the testimony taken and herewith submitted, I find the following *as matters of fact:* That Elijah Turner died, leaving his last will and testament, whereby he bequeathed certain property therein mentioned to certain persons named, to be equally divided among them. John Turner and L. A. Turner were appointed executors of the will. and immediately thereafter qualified as such and entered upon the discharge of their duties. In a codicil to the will, the testator directed that the portion of his estate which he had bequeathed to Sally Ellis should be divided by his executors among the eight children of Sally Ellis, named in the codicil, one of whom was this plaintiff. On the 22d day of October, 1859, the executors divided the property mentioned in the will among the parties entitled thereto, in the division the parties receiving unequal shares, some of them largely overdrawing. Notes without any security were taken by the executors for the amounts overdrawn. In March, 1860, the executors, John Turner and L. A. Turner, filed their petition for a final settlement of the estate in the Court of Ordinary for Spartanburg county, and, after notice given by publication to the parties in interest living without the state, a final settlement of the estate was made in the Ordinary's office on the 22d of June, 1860. Upon a full accounting, in which it was found that the sum of $84.38 was due to the plaintiff in this action by the executors, as her share in the estate, a statement was made up showing this, and the amounts due to some and overdrawn by others of the parties in interest, and upon this statement the following decree was filed:

"It appears from the foregoing statement that some of the legatees have received largely over their shares, it is necessary, therefore, that they pay to the executors the amounts so overpaid, with interest, from October 22d, 1859. When this is done it is ordered that the executors pay to those who have not re-

ceived their full shares the amounts found to be due them in the foregoing statement, with interest from October 22d, 1859.

                              " JNO. EARLE BOMAR, *O. S. D.*

" June 22d, 1860."

L. A. Turner died in March, 1861.   His executors, the defendants herein, have had nothing to do with the estate of Elijah Turner, deceased.   After the death of L. A. Turner, John Turner, the surviving executor, collected in confederate money, at different times, nearly all of the amounts overdrawn.   John Turner claims also to have paid out after said decree, for the benefit of the children of Sally Ellis, on January 30th, 1861, for medical services for their slave, $4 ; for the same, on December 21st, 1861, $5 ; on December 23d, 1861, for making a coffin for said slave, $3.   He further set up that he attended and boarded said slave for eighteen months, and that same was worth $144. To said claims the plaintiffs pleaded the statute of limitations. With the modifications above given, I find that the allegations of the complaint are true.   I find, as *matters of law*, that the defendant, as executor aforesaid, is indebted, by reason of the decree of the Court of Ordinary, as alleged in the complaint ; but that the same is entitled to credit for amounts paid out on account of medical services and for burial of the slave belonging to the children of Sally Ellis.   As there are three of said children unpaid, and all three have sued in this court, and their suits are tried along with this, and as interest amounts, at date of said payment, to more than principal, on the amount now due on said decree, there should be credited $4, being one-third of the amount so paid, the other two-thirds being credited on the claims of the two other children who have sued.   The claim for $144, or other claim of payment, cannot be allowed.   Even if not barred by the statute of limitations, it was no payment on the aforesaid decree of the Ordinary, and, at most, could only constitute a cause of action in favor of John Turner against the children of Sally Ellis.   It can have nothing to do with the case in hand. I find, therefore, that there is now due and owing to the plaintiff from the defendant, as executor aforesaid, the sum of $190.26,

and recommend that the plaintiff have judgment for the same, and for the costs and disbursements of the action.

Respectfully submitted,

S. J. SIMPSON, *Referee.*

· February 7th, 1879.

To said report the defendant excepted as follows, to wit:

1. Because, by the decree of the Ordinary, the executors of Elijah Turner, deceased, were not required to pay said decree until the legatees, who had overdrawn their shares in the division of the estate, paid back the amounts so overdrawn, with interest; and it having been shown by the testimony that these amounts were paid to John Turner, the surviving executor, after the death of L. A. Turner, the referee erred in holding the estate of L. A. Turner liable therefor.

2. Because the referee erred in holding the estate of L. A. Turner liable under the said decree, when it was conclusively shown that John Turner alone was the active executor, and that no part of the estate was ever shown to have been in the possession or control of L. A. Turner.

The case came on for a hearing before Judge Pressley, who made the following decree, to wit:

These cases having been heard together on exceptions to the report of the referee, after argument of counsel, it is ordered that the exceptions of the defendant, C. P. Turner, executor of L. A. Turner, to the report of the referee be sustained. That so much of the report as finds against him be set aside, that as to him the complaint herein be dismissed, and the defendant, C. P. Turner, executor of L. A. Turner, have judgment against the plaintiff for his costs and disbursements.

From which said decree the plaintiff appealed to the Supreme Court, upon the grounds that his Honor erred—

1. In sustaining the exceptions of the defendant to the report of the referee.

2. In refusing to confirm said referee's report, and give judgment in favor of the plaintiff.

*Mr. J. S. R. Thomson,* for appellant.

*Messrs. Evins & Bomar* and *Duncan & Cleveland,* for respondent.

January 7th, 1880. The opinion of the court was delivered by

WILLARD, C. J. The plaintiff has appealed from a judgment sustaining exceptions to the report of the referee and dismissing the complaint. The question turns on the construction and effect of a decree of the Ordinary, made June 22d, 1860, upon a settlement of the estate of Elijah Turner, to which L. A. Turner and John Turner, his executors, and all other persons in interest, were parties. The decree is as follows: " It appears from the foregoing statements that some of the legatees have received largely over their shares; it is necessary, therefore, that they pay to the executors the amounts so overpaid, with interest, from October 22d, 1859; when this is done, it is ordered that the executors pay to those who have not received their full shares the amounts found to be due them in the foregoing statement, with interest, from October 22d, 1859." The Circuit judge, overruling the referee, held that this obligation of the executors to pay was, under this obligation, altogether conditional upon their receiving back the amounts thus overpaid and decreed to be restored. It appears that L. A. Turner, one of the executors bound by this decree, died shortly after it was pronounced, and that such repayments as had been made under the decree by way of restoring the amounts overpaid, were actually paid to the surviving executor, and hence the court concluded that the defendant, the executor of this deceased executor, was not liable under the terms of the decree.

The question is, whether the decree created an absolute or a conditional obligation on the part of the executors. It is clear that postponing the time of payment until a future event that was certain to occur, did not prevent the obligation from being absolute. According to the form of this decree, the time of payment was fixed when the over-payments should be refunded. We are not at liberty, however, to overlook the nature of the

obligation imposed by this decree in putting a construction on its language. It established the proposition that there had been a *devastavit* affecting both of the executors, thus laying a ground for personal liability, and its object was to afford a remedy for this *devastavit*. It is entirely inconsistent with this object to hold that the executors are only liable on this condition as to the extent of the repayment of the money. Such a construction must be avoided if it can be done consistently with the terms of the decree. In order to sustain the conclusion of the Circuit Court it would be necessary to hold that neither of the executors was liable for any sum until the whole of the over-payment was refunded, notwithstanding part thereof might have been already refunded and in the hands of the executors ; and, also, that only the executor who received this fund could be called upon to distribute it. If we are to look to the form of the decree alone, and pay no regard to its purpose, then it may be that the contingency on which the executors are to pay is a single event, namely, the *last payment* on the full amount to be returned. In that case the liability could not arise until the last dollar was paid, and no provision was made for distributing such sums as may have already been collected by the executors under the decree. Such a construction is manifestly absurd. It was clearly intended that if the executors should not collect the whole amount required to be refunded that they should at the least distribute so much as they had in fact collected. This shows that the decree must be read in reference to its obvious purpose, and as the parties are in a court of equity in a case based upon this decree it can well be done. , Looking with that purpose, it is clear that as there had been a *devastavit* it must have been intended that the whole amount should be paid absolutely at same time by the executors. This conclusion is consistent with the argument of the decree that the executors should pay the whole sum overpaid, and not only such sum as they receive by way of refunding the amount over-paid, and, also, that they should pay interest on the whole sum over-paid from a day prior to the decree, although allowed to reimburse themselves *pro tanto* out of interest paid on the sums refunded. The conclusion must then be that it was intended to allow a reasonable time for the executors to call in the over-payments, and when such reasonable time had elapsed

that they should make the payments adjudged absolutely against them by the decree. No question is made as to the sufficiency of the time that has elapsed to satisfy such construction, and, therefore, the executors must be regarded as personally indebted at the date of the decree in the amount adjudged due for such over-payment, although payable at a future day. This view would render the estate of the deceased executors liable for the amount adjudged by said decree.

It follows that the judgment of the Circuit Court must be reversed, and the report of the referee confirmed, and the cause remanded to the Circuit Court for a judgment in accordance with the report of the referee.

Decree reversed.

McIVER, A. J., concurred.